IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSEPH W. DIEKEMPER, | |
|     Appellant, | |
|     vs. | Case No. 12-cv-1219-JPG |
| ROBERT EGGMAN, *Trustee*, | Appeal from Bankr. Case No. 04-32094 |
|     Respondent. | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on appellant Joseph W. Diekemper's appeal of the bankruptcy court's order dated November 20, 2012, Robert Eggman's, ("the Trustee") motion to strike (Doc. 10), and Diekemper's motion to take judicial notice (Doc. 14). Diekemper filed his appellate brief (Doc. 6), and the Trustee filed his brief (Doc. 11) to which Diekemper replied (Doc. 13). For the following reasons, the Court affirms the bankruptcy court's order.

**1. Facts**

The bankruptcy proceedings at issue have a long and detailed history, ultimately resulting in Diekemper's denial of discharge and conviction of bankruptcy fraud. Diekemper and his wife, Margaret Diekemper (collectively "Debtors") operated a dairy and grain farm in Carlyle, Illinois.[1] On May 21, 2004, they filed this joint voluntary bankruptcy petition under Chapter 12 of the United States Bankruptcy Code. In July 2004 it was converted to Chapter 11 and then in December 2006 it was converted to Chapter 7.

Subsequently, authorities discovered that Debtors were involved in an elaborate bankruptcy fraud scheme. As a result, Debtors were denied a discharge and indicted on twenty-

---

[1] Margaret Diekemper is not a party to this appeal. Reference to "Diekemper" throughout this order refers to Joseph W. Diekemper.

three counts.  On November 26, 2008, Diekemper pleaded guilty to four of those counts including conspiracy to commit bankruptcy fraud, conspiracy to commit mail fraud, making false statements for the purpose of influencing the USDA Commodity Credit Corporation, and perjury.  *See United States v. Diekemper*, Case No. 08-cr-30139-GPM.  In his signed stipulation of facts, Diekemper admitted that he

> utilized various means to effectuate this scheme including undervaluing property and assets, hiding valuable farm equipment, causing vehicles and equipment used by the defendant to be titled in the names of other persons, failing to disclose income, fraudulently obtaining agricultural subsidies on land already transferred to a creditor, failing to disclose the use of money for gambling, lying about a purported loan, lying to federal agents, perjury in the bankruptcy proceedings, and utilizing the mails in furtherance of the conspiracy and scheme to defraud.

*United States v. Diekemper*, Case No. 08-cr-30139, Doc. 62, pp. 2-3.  On April 13, 2009, Judge Murphy sentenced Diekemper to 120 months imprisonment for mail fraud and 60 months imprisonment for each of the other three counts, all to run concurrently.  Diekemper is currently serving that term of imprisonment.

Thereafter, the Trustee instituted an adversary proceeding naming Diekemper's bankruptcy attorney, James Richard Myers, among others, as a defendant.  *See Eggman v. Myers*, Case No. 08-cv-757-JPG.  The Trustee filed its original complaint in this Court on March 24, 2009.  With respect to Myers, the seven-count amended complaint alleged conspiracy to commit bankruptcy fraud, bankruptcy fraud and aiding and abetting, aiding and abetting breach of fiduciary duty, tortious concert of action, professional liability, and judgment under 11 U.S.C. § 105.  Ultimately, the Trustee settled the matter with Myers and judgment was entered on June 14, 2011.

Even after his denial of discharge and bankruptcy fraud conviction, Diekemper still pursues his bankruptcy case.  On February 14, 2012, he filed an amended schedule C (Doc. 875

in bankruptcy case), seeking to exempt proceeds from his son's wrongful death settlement, property traceable to those proceeds, and $352,000 in farm equipment. In their original bankruptcy petition and subsequent amendments, Debtors failed to schedule as an asset or claim as an exemption proceeds of or property traceable to the $860,000 wrongful death settlement. Debtor now claims the failure to do so was because of his attorney's mistakes.

In the bankruptcy court the Trustee objected to the amended exemptions, making three arguments that the amendment was inappropriate.  First, the Trustee argued that the newly added exemptions should be denied due to Diekemper's bad faith.  Second, the amendment would prejudice the creditors.  The Trustee alternatively argued that exemption of the wrongful death settlement and its proceeds was inappropriate because the Debtors were not financially dependent on their son at the time of his death and thus they were ineligible for such an exemption under Illinois law.

On October 29, 2012, the bankruptcy court held a hearing on these matters and ultimately denied Diekemper's motion to add exhibits to the amended schedules and sustained the Trustee's objection to the amended exemptions.  Specifically, the Court found that the wrongful death settlement proceeds were not exempt pursuant to the Illinois exemption statute because Diekemper was not a dependent of his deceased teenaged son, the farm equipment was not traceable to the wrongful death settlement proceeds, and Diekemper was acting in bad faith because he was attempting to exempt property which he had concealed.  Finally, the bankruptcy court found that the amendment should be denied because it would "unduly complicate the administration of the bankruptcy."  *In re Diekemper*, Bankr. Case No. 04-32094, Doc. 937, p. 12. The bankruptcy court entered its written order on November 20, 2012.

3

Diekemper now appeals the November 20, 2012, order of the bankruptcy court. Specifically, in his appeal, Diekemper argues the bankruptcy judge erred in (1) denying him an opportunity to amend his schedules and exemptions; (2) finding that the wrongful death settlement and its traceable proceeds are not exempt under Illinois law; and (3) denying the debtor statutory exemptions he alleges he is entitled to as a matter of law.  In his reply brief, Diekemper concedes his third argument.  The Court will now turn to consider the parties' motions.

**2.  The Trustee's Motion to Strike and Diekemper's Motion to Take Judicial Notice**

As an initial matter, the Court will consider the Trustee's motion to strike exhibits one, five, and six of Diekemper's brief (Doc. 10).  When considering an appeal from a bankruptcy court, district courts act as appellate courts.  *In re Zolner*, 249 B.R. 287, 291 (N.D. Ill. 2000).  As such, a district court considering a bankruptcy appeal may only consider evidence that was before the bankruptcy court and made part of the record.  *Id.*; *In re Loefgren*, 305 B.R. 288, 291 (W.D. Wis. 2003).

Exhibit one (Doc. 6-1) of Diekemper's brief is entitled "Plaintiff's Initial Answers to Defendant James Richard Myers' First Set of Interrogatories" from *Eggmann v. Myers*, Case No. 08-cv-757-JPG.  Exhibit five (Doc. 6-5) is a newspaper article from the Centralia Sentinal entitled "Coroner's Jury Rules Deaths Accidental," and references the death of Diekemper's son. The third exhibit to which the Trustee's motion refers, also labeled "exhibit five" by Diekemper, but included in a supplement to his brief, is entitled "Disclosure of Lay Witnesses, Independent Opinion Witnesses, and Controlled Opinion Witnesses" from *Diekemper v. Art's Way Manufacturing Co.*, St. Clair County, Illinois, Case No. 01-L-649.  Because these items were not

before the bankruptcy court, this Court cannot consider them in this appeal.  Accordingly, the Court grants the Trustee's motion and strikes the above-referenced exhibits.

Diekemper filed a motion asking the Court to take judicial notice of *In re Rigdon*, 133 B.R. 460, 465 (S.D. Ill. 1991), a case which both parties cite to for its persuasive authority.  The Court need not take judicial notice of case law that is readily available to the Court.  The Court thus denies Diekemper's motion to take judicial notice (Doc. 14).  The Court, however, can assure Diekemper that it has considered the reasoning of *In re Rigdon*.  The Court will now turn to consider the substance of Diekemper's appeal.

### 3. Diekemper's Appeal

In a bankruptcy appeal, the bankruptcy court's findings of fact "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. P. 8013; *see In re Krueger*, 192 F.3d 733, 737 (7th Cir. 1999).  A finding is clearly erroneous when the reviewing court, having considered the entire body of evidence, is left with the definite and firm conviction that a mistake has been committed.  *Shaw v. Prentice Hall Comp. Pub., Inc.*, 151 F.3d 640, 642 (7th Cir. 1998).  The standard is highly deferential to the bankruptcy court, and if its view of the evidence is plausible in light of the record as a whole, the district court cannot reverse even if it takes a different view of the evidence.  *Matter of Love*, 957 F.2d 1350, 1354 (7th Cir. 1992).  On the other hand, where questions of law are concerned, the district court reviews the bankruptcy court's ruling *de novo.  In re Krueger*, 192 F.3d at 737.  The district court may affirm, modify or reverse a bankruptcy judge's judgment, order or decree or it may remand with instructions for further proceedings. Fed. R. Bankr. P. 8013.

### a. The Bankruptcy Court did not Err in Finding Diekemper's Amendment to be in Bad Faith

Diekemper first contends the bankruptcy court erred when it denied his motion to amend exemptions finding Diekemper acted in bad faith. Diekemper argues that the civil suit filed against Myers demonstrates that the fraud involved in this case was Myers' fault, not Diekemper's. He also argues that the trustee's current position that Diekemper is acting in bad faith is inconsistent with his position in the civil suit against Myers.

As an initial matter, the Court notes that it will review this matter for clear error because "[t]he issue of a debtor's intent is a question of fact, or of inference to be drawn from facts, for the bankruptcy court to determine." *Matter of Yonikus*, 996 F.2d 866, 872-73 (7th Cir. 1993). Pursuant to Federal Rule of Bankruptcy Procedure 1009(a), a debtor may amend a voluntary position "as a matter of course at any time before the case is closed." However, "amendment may be denied upon a clear and convincing showing of bad faith by the debtor or prejudice to the creditors." *Matter of Yonikus*, 996 F.2d 866, 872 (7th Cir. 1993). "Bad faith and/or prejudice must be shown by clear and convincing evidence." *Id*. The Seventh Circuit has specifically found that "'concealment of an asset will bar exemption of that asset.'" *Id*. (quoting *Matter of Doan*, 672 F.2d 841, 833 (11th Cir. 1982)).

In *Yonikus*, the debtor failed to list his workers' compensation claim or personal injury action on his bankruptcy schedule or claim them as exempt on his schedule of exempt property. *Yonikus*, 996 F.2d at 868. Even after he received his workers' compensation award and settlement proceeds, he failed to amend his bankruptcy accordingly. *Id*. Finally, more than six years after he filed his bankruptcy petition and four months after the court revoked his discharge, the debtor filed a supplemental schedule of exempt property, in which he claimed an exemption for his workers' compensation claim. *Id*. at 867. The debtor claimed he did not attempt to

fraudulently conceal his workers' compensation claim because he did not believe he was required to report it. *Id*. at 871. The Court noted that a debtor's failure to initially disclose assets indicates the debtor

> meant to hide assets if [he] could get away with it . . . . The operation of the bankruptcy system depends on honest reporting. If debtors could omit assets at will, with the only penalty that they had to file an amended claim once caught, cheating would be altogether too attractive.

*Id*. (quoting *Payne v. Wood*, 775 F.2d 202, 205 (7th Cir. 1985)).

Here, similar to the debtor in *Yonikus*, Diekemper waited eight years after he initially filed his bankruptcy to disclose settlement proceeds and claim exemptions with respect to his death settlement proceeds and the property traceable thereto. Like *Yonikus*, Diekemper's failure to report this settlement suggests that he was going to hide this settlement as long as he could get away with it. This is a particularly reasonable conclusion considering the elaborate scheme of bankruptcy fraud in which Diekemper engaged, resulting in the denial of his discharge and conviction. Further, the farm equipment Diekemper sought to exempt was equipment he previously had been found to have concealed. Considering these facts and the years of experience the bankruptcy court had in dealing with Diekemper's fraud, it was clearly not unreasonable for the bankruptcy court to find there was clear and convincing evidence that Diekemper was acting in bad faith with regard to these belatedly-claimed exemptions. Further, the Court finds Diekemper's argument that the Trustee's position in this case is inconsistent with his position in the civil case against Myers unpersuasive. There is nothing inconsistent in arguing that both the attorney and debtor were engaged in fraud. As such, the bankruptcy court's conclusion that Diekemper acted in bad faith was not clearly erroneous. Thus, the Court affirms the bankruptcy court's denial of Diekemper's amendment.

### b. The Bankruptcy Court Correctly Concluded Diekemper was not a Dependent of his Teen-Aged Son

Next, Diekemper contends the bankruptcy court erred in finding the wrongful death settlement funds were not exempt pursuant to 735 ILCS 5/12-1001(h)(2). Chapter 735 ILCS 5/12-1001(h)(2) exempts "[t]he debtor's right to receive, or property that is traceable to: a payment on account of the wrongful death of an individual of whom the debtor was a dependent, to the extent reasonably necessary for the support of the debtor." "[A] 'dependent,' for purposes of § 12-1001 . . ., is an individual who is supported financially, either directly or indirectly by another, and who reasonably relies on such support." *In re Rigdon*, 133 B.R. 460, 465 (S.D. Ill. 1991). "This is a broad definition, and a factual finding of dependence will thus have to be made, after a hearing, on a case by case basis." *Id.* Thus, because a debtor's dependency status is a factual inquiry, the Court will review the bankruptcy court's decision for clear error.

Diekemper argued he qualified for this exemption because his teenaged deceased son helped in farming operations and he was thus dependent on his son for that help. The bankruptcy court found that the son's help with the farm did not qualify Diekemper for this exemption. Specifically, the bankruptcy court noted

> The Debtor's Schedules show the Debtors operated a large dairy farm involving $1,676,680.00 in assets, and generated monthly business income of $120,000.00. After business expenses were deducted, the Debtor was left with a monthly income of $20,000.00. Under these circumstances, it cannot be concluded that the Debtor was dependent on his deceased son.

Doc. 937, pp. 8-9 in bankruptcy case.

Based on the income received by Diekemper from farming operations and the lack of any evidence that the teenaged son provided financial support to Diekemper, it was reasonable for the bankruptcy court to conclude that Diekemper could not have reasonably relied on any support from his teenage son. As such, this Court fails to find that the bankruptcy court's finding

was clearly erroneous. Accordingly, the Court affirms the bankruptcy court's finding that Diekemper did not qualify for the Illinois exemption under 735 ILCS 5/12-1001(h)(2) because Diekemper was not a dependent of his teen-aged son.

### c. The Court Need Not Consider Diekemper's Third Argument Conceded in his Reply Brief

Finally, Diekemper originally argued in his brief that the bankruptcy court abused its discretion when it denied him exemptions he alleged he was entitled to as a matter of law. In his reply brief, however, Diekemper acknowledges "that the bankruptcy judge has the authority to deny the exemptions" and "concedes this argument." Doc. 13, p. 10. Due to this concession, the Court need not consider Diekemper's final argument.

## 4. Conclusion

For the foregoing reasons, the Court

- **GRANTS** the Trustee's motion to strike (Doc. 10);
- **DENIES** Diekemper's motion to take judicial notice (Doc. 14);
- **DENIES** Diekemper's motion for reconsideration (Doc. 4) as moot;
- **AFFIRMS** the bankruptcy court's November 20, 2012, order; and
- **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:** April 1, 2013

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT COURT**